UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THEODORE BRZEZINSKI,

      Plaintiff,

      v.                              Case No. 05-C-1020

VITAL RECOVERY SERVICES, INC.,

      Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. PROCEDURAL BACKGROUND

This action was commenced on September 21, 2005, when the plaintiff, Theodore Brzezinski ("Brzezinski"), filed a complaint against defendant Vital Recovery Services, Inc. ("Vital") claiming that in December 2004 Vital sent him a debt collection letter the text of which violated the provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692, *et seq*. Specifically, Brzezinski claims that he received a debt collection letter from Vital on the reverse side of which was the following language:

> IF YOU NOTIFY US IN WRITING THAT: (I) YOU WISH US TO CEASE CONTACT WITH YOU BY TELEPHONE AT YOUR RESIDENCE OR PLACE OF EMPLOYMENT, THEN NO SUCH FURTHER CONTACT BY TELEPHONE SHALL BE MADE . . .

(Compl. at ¶ 8.)

Brzezinski claims that this language violates 15 U.S.C. § 1692c. More precisely, section 1692c(a) provides as follows:

**(a) Communication with the consumer generally.** Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt -

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge or circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

Brzezinski claims the debt collection letter he received from Vital violated section 1692c because that statutory section does not require that a "consumer," as that term is used in the FDCPA, notify a debt collector *in writing* of the consumer's desire to not have the debt collector contact him at an inconvenient place, at an inconvenient time, or at the consumer's place of employment. And, according to Brzezinski, by falsely representing to Brzezinski that a request to cease contact by telephone at his residence or place of employment must be in writing, Vital violated section 1692e, which states, *inter alia*, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Vital answered Brzezinski's complaint, denying all material allegations and asserting a number of affirmative defenses, including that "any non-compliance by [Vital] with the [FDCPA] was unintentional and resulted from bona fide error." (Answer at 5.)

2

Currently pending before the court is the defendant's motion for summary judgment which is fully briefed and is ready for resolution. For the reasons which follow, the defendant's motion will be denied.

## II. SUMMARY JUDGMENT

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it

3

differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

At least for purposes of its summary judgment motion, Vital does not dispute that it is a debt collector whose actions are governed by the FDCPA. Nor does it dispute that it sent the challenged letter to Brzezinski. Nor does it dispute that Brzezinski is a consumer for purpose of the FDCPA. Instead, Vital presents two arguments in support of its motion. First, it argues that, as a matter of

law, the letter does not violate the FDCPA. Second, it argues that, even if this court were to find the letter does violate the FDCPA, liability should nevertheless not be imposed on Vital because the undisputed material facts demonstrate that any violation on the part of Vital was unintentional and a bona fide error.

Claims against debt collectors under the FDCPA are to be viewed through the eyes of the "unsophisticated consumer." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). The unsophisticated consumer is regarded as "uninformed, naive, or trusting," but nonetheless is considered to have a "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004) (internal quotations omitted).

The unsophisticated consumer standard is an objective one. Accordingly, courts disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters. *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). After all, any document can be misread. Thus, the FDCPA is not violated by a letter that is susceptible of an ingenious reading. Indeed, the FDCPA protects the unsophisticated debtor, but not the irrational one. *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000). Consequently, a plaintiff's mere claim of confusion is not enough to ultimately prevail in a FDCPA case. *Durkin*, 406 F.3d at 415. Rather, a plaintiff must demonstrate that the challenged "language of the letters unacceptably increases the level of confusion." *Id*. (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). "[A] plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact 'unless a significant fraction of the population would be similarly misled.'" *Id*. (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

5

However, there is a "triable issue" when a "judge reading a collection letter reasonably concludes that it could confuse a substantial number of recipients." *Taylor v. Cavalry Investments, L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004).

According to the defendant, "[a]pplying these standards to the statement Brzezinski complains about requires a 'fantastic conjecture' in order to find that it is false, misleading, or otherwise violates the FDCPA" (Def's Br. at 4-5.) Indeed, Vital argues that although not required by law, Vital's letter actually gives Brzezinski more information than required by law, and more rights than afforded under the FDCPA. This is because

> [s]ection 1692c(a)(3) only prohibits contact at the debtor's place of employment *if* the debt collector knows that the employer prohibits communications at work. Section 1692c(c) limits communications only *if* the consumer notifies the debt collector to stop communications. These statutory provisions do not mandate that a debt collector inform the debtor of these restrictions, or of the debtors statutory rights. Moreover, Vital *offered* Brzezinski the opportunity to preclude *all* contact by telephone, even contact expressly allowed under the Act, simply by notifying Vital, in writing, of that request. Vital's offer extended to ceasing communications *at any time*, and regardless of whether Brzezinski's employer prohibited such communications.

(Def.'s Br. at 9 (emphasis in original).)

Brzezinski counters by arguing that section 1692c(a) plainly and simply requires that a debt collector not communicate with a consumer either "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer" or "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(1) and (3). The statute does not contain a requirement that a consumer notify a debt collector *in writing* that he/she wants the debt collector to cease contacting the consumer by telephone at his/her residence or place of employment. "[O]nce the debt collector knows or has reason to know that such debt calls are

6

inconvenient or prohibited by the employer, the debt collector must not call. Any statement that includes a writing requirement necessarily creates an additional hurdle for consumers, who are presumed to be unsophisticated, from knowing and exercising their rights under federal law." (Pl.'s Br. at 6.) In other words, if a debt collector learns, whether *in writing* or *verbally*, that a consumer does not want to be communicated with at his/her place of employment or at some other time and place deemed inconvenient to them, then the debt collector must not communicate with the consumer at his/her place of employment or at the other time and place deemed inconvenient to them. The plaintiff asserts that "[t]he Court must conclude that Congress's intent was for debt collectors to honor oral requests to cease communications at places of employment and at inconvenient times and places." (Pl.'s Br. at 8.)

In the end, according to the plaintiff, "this is a simple case. The statute in question does not contain a writing requirement, yet the defendant tells unsophisticated consumers that notifications in writing will make the defendant cease telephone calls at home or at work. The defendant's statement does not reflect the law, and violates 15 U.S.C. § 1692e." (Pl.'s Br. at 7.)

I agree with the plaintiff that, under the statute, debt collectors must honor requests to cease communications at places of employment and at inconvenient times and places, even if the requests are made orally and are not written. This is because the statute places on the debt collector the burden of not communicating with the consumer once the debt collector knows or has reason to know that a particular time and place are inconvenient for the consumer or that the consumer's employer prohibits the consumer from receiving such communication. Obviously, such knowledge can be conveyed to the debt collector in either written or oral fashion (and not even necessarily by the consumer himself). However, that the statute places such a burden on the debt collector does

7

not automatically translate into a finding that the debt collection letter in this case was false, deceptive or misleading.

As noted previously, the plaintiff claims that the following language on the reverse side of the debt collection letter was false and misleading: "IF YOU NOTIFY US IN WRITING THAT: (I) YOU WISH US TO CEASE CONTACT WITH YOU BY TELEPHONE AT YOUR RESIDENCE OR PLACE OF EMPLOYMENT, THEN NO SUCH FURTHER CONTACT BY TELEPHONE SHALL BE MADE ." But that was not the only language contained on the reverse side of the letter. The full paragraph in which the above-quoted language is contained reads as follows:

> IF YOU NOTIFY US IN WRITING THAT: (I) YOU WISH US TO CEASE CONTACT WITH YOU BY TELEPHONE AT YOUR RESIDENCE OR PLACE OF EMPLOYMENT, THEN NO SUCH FURTHER CONTACT BY TELEPHONE SHALL BE MADE; (II) YOU REFUSE TO PAY A DEBT OR WISH US TO CEASE FURTHER COMMUNICATION WITH YOU, THEN WE SHALL NOT COMMUNICATE FURTHER WITH YOU WITH RESPECT TO SUCH DEBT, EXCEPT FOR A WRITTEN COMMUNICATION: (A) TO ADVISE YOU THAT OUR FURTHER EFFORTS ARE BEING TERMINATED; (B) TO NOTIFY YOU THAT WE OR THE CREDITOR MAY INVOKE SPECIFIED REMEDIES WHICH ARE ORDINARILY INVOKED BY US OR THE CREDITOR; (C) WHERE APPLICABLE, TO NOTIFY YOU THAT WE OR THE CREDITOR INTEND TO INVOKE A SPECIFIED REMEDY PERMITTED BY LAW. IF YOUR WRITTEN NOTICE CONCERNING (I) AND/OR (II) ABOVE IS MADE BY MAIL, NOTIFICATION SHALL BE COMPLETE UPON OUR RECEIPT.

(Compl., Ex. A.)

When viewed in its totality, the language in the debt collection letter appears to be an attempt to merge several particular provisions of § 1692c, specifically, 1692c(a)(1), 1692c(a)(3) and 1692c(c). Those particular provisions read as follows:

> **(a) Communication with the consumer generally.** Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt -

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge or circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

. . . .

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer form receiving such communication.

. . . .

**(c) Ceasing communication.** If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except -

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Section (II) of the debt collection letter is clearly an effort to communicate to the consumer the matters set forth in §1692c(c). And indeed, section (II) does set forth quite accurately the matters found in § 1692c(c). However, to the extent that section (I) of the debt collection letter is an attempt to set forth the matters found in § 1692c(a)(1) and (3), it falls short.

More precisely, § 1692c(a)(1) and (3) do not necessarily require that a consumer do anything in order to have the debt collector cease communicating with them at their residence or at their place of employment. To the contrary, the debt collector must, on its own, cease communicating with the

9

consumer at any place known or which should be known to be inconvenient to the consumer. Such a place could conceivably include the consumer's residence as well as his place of employment. Furthermore, the debt collector must, on its own, cease communicating with the consumer at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication. Yet, the language of section (I) of the debt collection letter could, in my view, "confuse a substantial number of recipients," *Taylor*, 365 F.3d at 575, by suggesting to them that only a notification from the consumer to the debt collector will result in getting the debt collector to not communicate with the consumer at his residence or at his place of employment. This confusion is further subject to being compounded by virtue of the language of section (I) suggesting to the consumer that it is only a written notification to the debt collector (and not a verbal communication) that will result in getting the debt collector to not communicate with the consumer at his residence or at his place of employment.

To be sure, section (II) of the debt collection letter advises the consumer that if he wishes the debt collector to cease further communication with him, the consumer should notify the debt collector in writing to that effect. But, it may very well be that the consumer does not want to cease all communications; he may only want to have them not occur at his residence or at his place of employment. And perhaps he does not want to take the time to write a letter to the debt collector (or perhaps he cannot write very well and is ashamed or afraid to write a letter). Instead, he would prefer to call the debt collector. Unfortunately, the text of section (I) of the debt collection letter does not offer him that option or, at a minimum, could be confusing to a consumer on the question of whether he has such an option.

10

Such being the case, and for the foregoing reasons, I am persuaded that "there is a triable issue" on whether the debt collection letter in this case is false, deceptive or misleading. Consequently, to the extent that the defendant's motion for summary judgment is predicated on the argument that the debt collection letter, as a matter of law, is not false, deceptive or misleading, the defendant's motion will be denied.

But that does not end the analysis. As previously noted, Vital argues that, even if the court were to determine that the debt collection letter violated the FDCPA, Vital would nevertheless be entitled to summary judgment because the violation was unintentional and a bona fide error. Of course, this court has not found the letter to have violated the FDCPA. It has found only that there is a material issue of fact as to whether certain language in the letter is false, deceptive or misleading. Nevertheless, even assuming *arguendo* that the letter did violate the FDCPA, Vital would indeed be entitled to summary judgment if the undisputed material facts demonstrate that the violation was unintentional and a bona fide error. This is because 15 U.S.C. § 1692k(c) provides that

> [a] debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

To qualify to the bona fide error defense, Vital must make three showings under § 1692k(c): (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)). With respect to the first element of the defense, a debt collector need only show that the violation was

unintentional, not that the communication itself was unintentional. *Id.*

In support of its bona fide error defense, Vital filed the affidavit of its Senior Vice-President of Operations, James D. Hensley ("Hensley"). In his affidavit Hensley avers, in pertinent part, as follows:

> 3. Vital Recovery Services, Inc. utilizes an approved training video entitled: **"What's Fair? Communication and Contact Under the FDCPA"** which was purchased from the American Collector Association International. Vital also has and utilizes written training materials regarding the Fair Debt Collection Practices Act (FDCPA).
>
> . . . .
>
> 5. The letter sent to Theodore Brzezinski by Vital is a template letter that is modified and individualized for each debt collection account. The specific letter . . . was not used with any other debt collection account and was not sent to any debtor other than Theodore Brzezinski. The reverse side of [the letter] is regularly used and is regularly included in its entirety as part of Vital's template and debt collection notice letter.
>
> . . . .
>
> 8. The policy of Vital Recovery Services, Inc. is to comply with the Fair Debt Collection Practices Act and the employees of Vital endeavor to do so to the best of our ability. Vital's procedure is to train employees on the requirements of the FDCPA and test them on their knowledge.
>
> 9. It is my understanding that the reverse side standard notice language contained in [the letter] has common use and general acceptance among debt collection companies and that its wording, including the statement objected to by Theodore Brzezinski, was previously reviewed and approved by qualified attorneys for FDCPA compliance purposes. Vital Recovery Services, Inc. adopted [the letter] and began business use of the . . . template letter based on this understanding and with the intention of complying with the notice requirements of the FDCPA.
>
> 10. As part of my employment, I was aware of the ***Dodi*** litigation in 2003 which challenged the standard language of Vital's debt collection notice letter. It was my understanding that the court in ***Dodi*** declared our form template letter to be in compliance with FDCPA. The form template letter remained in defendant's use after the ***Dodi*** lawsuit was dismissed and through the time that it was sent to Theodore Brzezinski in 2004. I believed our standard template notice letter complied with all requirements of the Act when it was issued to Theodore Brzezinski.

12

> 11. I am unaware of any FDCPA violations that are contained in our standard debt collection notice letter, either at this time, or during its past use at Vital Recovery Services, Inc. This company has not received any complaints about its use or wording other than the **Dodi** litigation and this lawsuit by Theodore Brzezinski.

(Hensley Aff. at ¶¶ 3, 5, 8-11.) The plaintiff has not filed any affidavit presenting facts in opposition to those presented by Hensley in his affidavit. Instead, the plaintiff argues, *inter alia*, that Vital should not be afforded the bona fide error defense because, even assuming *arguendo* that Vital sent the letter to Brzezinski under the mistaken belief that its language was not in violation of the FDCPA, "to hold that a bona fide error defense exists for a debt collector every time that the debt collector simply makes a mistake of law . . . would allow sophisticated debt collectors to always simply claim ignorance of what they were permitted to do, and completely negate the FDCPA's ability to protect unsophisticated consumers." (Pl.'s Br. at 17.)

In essence, Vital is arguing that if the language in the letter it sent to Brzezinski is a violation of the FDCPA, then the violation was the result of a bona fide error because Vital thought it was in compliance with the Act. In other words, any violation of the FDCPA was the result of a legal error. There is a split of authority as to whether the bona fide error defense is available for legal errors as opposed to clerical errors. *Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002). While the majority position is that the defense is not available for legal errors, there is language in *Nielsen* which suggests that the Seventh Circuit might recognize such a defense. *Id*. at 641.

Resolution of this legal question, however, is not necessary in order to resolve the current motion for summary judgment. Assuming that the bona fide error defense is available for legal errors, Vital must show that the error was "bona fide" and that it "maintained procedures reasonably adapted to avoid any such error." In this respect, Vital has come forth with two pieces of "evidence," both contained in Hensley's affidavit. Hensley states that "[i]t is [his] understanding" that the

13

language in question is commonly used by debt collectors, and that the language "was previously reviewed and approved by qualified attorneys for FDCPA compliance purposes." (Hensley Aff. at ¶9.) Moreover, Hensley states that "[i]t was my understanding" that the *Dodi* court determined that the language complied with the FDCPA. (Hensley Aff. at ¶ 10.)

That Hensley "understands" that "qualified attorneys" reviewed and approved the challenged language is not enough to establish that Vital "maintained procedures reasonably adapted to avoid [a legal] error." First of all, Hensley's statement is not competent evidence to establish that a lawyer did in fact review and approve the language. When a person states that he "understands" something to be true, it usually means that he does not have first hand knowledge about it; in other words, his knowledge and thus his understanding is based on hearsay. Indeed, if Hensley had first hand knowledge that lawyers reviewed the particular language in question, his affidavit should have reflected such fact. This is because affidavits made in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P 56(e). Simply stated, while Hensley's affidavit may show that he is competent to testify on the question of whether Vital's alleged error was unintentional, it does not show that he is competent to testify that Vital consulted lawyers and therefore maintained procedures reasonably adapted to avoid legal errors.

Furthermore, even if the challenged language had been reviewed by a lawyer, this does not necessarily translate into a finding that Vital maintained procedures reasonably adapted to avoid legal errors. There is no evidence as to nature or depth of the review that was allegedly conducted by legal counsel. Certainly a cursory review would be different than a thorough review for the purpose of

14

determining the reasonableness of the procedures maintained by Vital.

Given that at this point I must construe all facts in the light most favorable to Brzezinski, I conclude that, even if a lawyer did "review and approve" the language in question, that does not necessarily mean that Vital maintained procedures reasonably adapted to avoid legal errors.

Furthermore, with regard to the *Dodi* decision, Hensley's affidavit states that he "understood" the *Dodi* court approved the language that was used in the letter to Brzezinski. *Dodi* was a case decided by the United States Bankruptcy Court for the Northern District of California in 2003 and in which Vital was a party. One of the plaintiff's claims in that case (Count II) challenged the legality of the language that is currently being challenged in this court. To be sure, the *Dodi* court granted summary judgment to Vital. However, the record before this court does not reveal the *Dodi* court's reasoning. The record before this court simply reflects that the *Dodi* court found that "there is no genuine issue as to any material fact and that Vital Recovery Services, Inc is entitled to judgment as a matter of law." (Kriva Aff., Ex. D (*Dodi v. Discovery Bank*, No. 00-32708 SF C13 (Bankr. N.D. Cal. Oct. 15, 2003).)

Simply stated, the *Dodi* court (at least in its written order) did <u>not</u> explicitly find "[Vital's] form template letter to be in compliance with [the] FDCPA." (Hensley Aff. at ¶ 10.) Such being the case, I am not persuaded that any understanding that Hensley (even though he may not be a lawyer) may have had of the legal ramifications of the *Dodi* decision necessarily establishes that any error resulting from Vital's reliance on that case was bona fide.

For all of the reasons discussed above, I am not persuaded that there exist no issues of material fact and that Vital is entitled to summary judgment based on the bona fide error defense. Simply stated, Vital has not presented competent evidence to show that no reasonable jury could find

either that (1) any error committed was not bona fide, or (2) that Vital did not maintain procedures reasonably adapted to avoid legal errors. Consequently, to the extent that Vital's motion for summary judgment is predicated on the argument that Vital is relieved from any liability by virtue of the bona fide error defense, the defendant's motion will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that on Monday, July 24, 2006, at 9:00 a.m. a further scheduling conference will be conducted in Room 253 of the United States Court House, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to discuss with the parties the steps necessary to further process this case.

**SO ORDERED** this 12th day of July 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge